**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

SCOTT M. BEYERINK,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C07-3018-PAZ

**MEMORANDUM OPINION
AND ORDER**

_____

This matter is before the court on judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") benefits under Title XVI of the Act. The plaintiff Scott M. Beyerink protectively filed his applications on July 3, 2001, alleging his disability began on September 1, 1998. Beyerink claims he is disabled due to back and leg injuries, depression, borderline intellectual functioning, and illiteracy.

Beyerink's applications were denied initially and on reconsideration. He requested a hearing, and a hearing was held on March 4, 2003, before ALJ John Sandbothe. The ALJ found Beyerink could return to his past relevant work as a production welder. Beyerink appealed, and on December 9, 2004, the Appeals Council vacated the ALJ's decision and ordered remand for further evaluation of the extent to which Beyerink's mental impairments impact his functional ability.

A second hearing was held before ALJ Sandbothe on May 17, 2005. Beyerink was represented at the hearing by attorney Robert Johnson. Beyerink testified at the hearing, and Vocational Expert ("VE") Roger Marquardt also testified. On January 11, 2006, the

ALJ held Beyerink is able return to his past relevant work as a production line welder and a salvage laborer, and he therefore is not disabled. Beyerink appealed the ALJ's decision, and on January 20, 2007, the Appeals Council of the Social Security Administration denied his request for review, making the ALJ's decision the final decision of the Commissioner.

Beyerink filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. On March 20, 2007, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issue before the court is whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court considers the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Beyerink was born in 1964. He lives with his parents, who help him manage his money and shop for food and clothing. He has a driver's license, but he was able to take the written test only by having it read to him at the testing center. He began exhibiting difficulties with reading and math skills in the first grade, and these difficulties continued throughout his schooling. In high school, he was graded on a special education scale. When he was fifteen-and-a-half years old, he underwent a Speech Services Evaluation that demonstrated he was functioning "significantly below his chronological age with respect to his ability to understand the meanings of words." (R. 177) The tests indicated Beyerink's vocabulary recognition and grammatical skills were at the level of a ten to eleven year old.

Beyerink's work history has been sporadic. In 1989, he did farm work from April through October. In 1990, he worked for a couple of months as a welder. He had no formal training in welding, receiving only on-the-job training. In 1991, he worked for two months installing tiling in farm fields. He did little or no work in 1992, 1993, 1994, 1995, and most of 1996, although it appears he was incarcerated for at least a portion of this time. (*See* R. 244).

Beyerink suffered a back injury in 1993, when he was lifting logs. He had a CAT scan on September 3, 1993, that revealed "[m]ild-to-moderate central and right posterior lateral disc herniation at L4-5." (R. 226) He received conservative treatment for a few weeks that included epidural injections, chiropractic treatments, and physical therapy, but these treatment modalities failed to relieve his back pain. On September 29, 1993, he underwent a right L4-5 microdiscectomy. After the surgery, he reported almost total relief of his leg pain. He returned to work soon after the surgery and reportedly did fairly well. His doctor indicated he "tolerated even some fairly heavy lifting" without significant leg pain, although he did complain of occasional back discomfort. (R. 243) The doctor advised Beyerink to avoid extremely heavy lifting, but he noted Beyerink would have to continue working to pay his bills regardless of his doctors' advice. By February 1994, the doctor indicated Beyerink should be able to return to all activities without any restrictions.

Beyerink did seasonal work for a couple of months in 1996, and again in 1997, driving a truck and working in the shop of a fertilizer company. From 1996 to 1998, he also worked at an auto salvage business, sorting iron and cutting iron with a torch. On April 5, 1996, while he was working, he suffered a severe injury to his right leg when a barrel blew up as he was cutting it in half. According to Beyerink, he narrowly escaped losing his leg. He had several surgeries, including insertion of hardware in his right tibia, and subsequent removal of the hardware in October 1997, due to pain. Beyerink testified it took him "a number of years to get walking again." (R. 362; *see* R. 245-72; 275-99)

3

He worked for a few months in 1998, digging ditches for an electric company, and for a couple of weeks doing roofing work. At the time of the ALJ hearing, he was working as a dishwasher at a Chinese restaurant for about four hours a day, five days a week.

On September 4, 2001, V. Ted Motoc, M.D. examined Beyerink at the request of Disability Determination Services. Beyerink stated he had never been free of pain since his back injury in the early 1990s. Sneezing, coughing, and straining of the abdomen made his pain worse, and the pain occasionally radiated down into his legs. He took Tylenol as needed for the pain, which he rated at a 6/10 level of intensity. He complained of severe pain on forward bending. He also complained of ongoing pain in his right leg, worse when standing. With regard to his activity level, Beyerink stated he could stand and walk for six to seven hours daily, lift and carry fifty pounds without discomfort, and ride a bike each week for about fourteen miles at a time without any severe pain. He complained of some sleep disturbance, stating he slept five to six hours each night, waking up every couple of hours due to pain.

Objective examination indicated Beyerink had significant weakness in his lumbar spine when compared to the average population. He exhibited minimally diminished ranges of motion of his cervical and lumbar spine. Based on the testing he administered, Dr. Motoc opined Beyerink would benefit from a back strengthening program, and initiation of daily anti-inflammatory medications. He reached the following conclusions regarding Beyerink's work-related functional abilities:

> With respect to lifting and carrying I think that Mr. Beyerink should be able to lift 50 lbs on [an] occasional basis, 25 lbs on a frequent basis and 20 lbs on a constant basis. I would recommend a 5 minutes break every 60-90 minutes.
>
> With respect to his abilities to stand, sit, walk and move around I think that Mr. Beyerink can perform quite reasonabl[y]. He should be allowed to pause every 60-90 minutes for 5-10 minutes.

> With respect to his kneeling, climbing, stooping and crawling abilities, I do have concerns related to his right leg pain. He should not be asked to perform such activities on a frequent basis.
>
> I see no limitations with respect to handling objects.
>
> With respect to seeing, hearing, speaking or with issues concerning exposures to the work environment, such as to dust, fumes, temperatures or hazards I do not have any particular concerns.

(R. 305)

On September 11, 2001, Beyerink underwent a psychological evaluation by John F. Wallace, Ph.D., at the request of Disability Determination Services. Beyerink stated he was unable to gain employment due to his physical limitations. He stated that although he had experienced substantial academic problems, he had worked to improve his reading skills and was now able to "read at a level that enables him to use the repair manuals for various types of engines." (R. 313) He indicated he did some household chores such as laundry and cooking, but he was unable to mow the lawn. He enjoyed repairing small engines, and engaged in social activities with his relational partner. Dr. Wallace administered the WAIS-III mental status examination, which indicated Beyerink has a Verbal IQ of 70, Performance IQ of 85, and Full Scale IQ of 75. The doctor noted these scores might underestimate Beyerink's abilities because Beyerink attempted to converse with the doctor during testing, which could decrease his concentration on some test items. The doctor diagnosed Beyerink with Borderline Intellectual Functioning based on his Full Scale IQ. He noted that the disparity between the Verbal and Performance IQs was significant, "consistent with Mr. Beyerink's report of difficulties with his studies during his school years." (R. 314) The doctor opined Beyerink would have difficulty carrying out complex instructions, but he likely could manage his own financial affairs.

Beyerink was evaluated by Joseph J. Chen, M.D. on March 3, 2003, for complaints of back pain. Dr. Chen found no evidence off radiculopathy. He recommended Beyerink "focus on his posture, flexibility, back and abdominal strengthening and conditioning," and he instructed Beyerink in simple exercises he could do on his own. Beyerink's parents reported that their son had had difficulty keeping a job, noting he has significant reading problems. The doctor opined Beyerink's reading problems could explain his inability to keep a job, and he suggested Beyerink contact the local community college for assistance with his reading skills.

On February 18-19, 2003, Beyerink underwent a two-day work evaluation at Wesco Industries. He expressed an unwillingness to participate in the evaluation, appearing to be uneasy and self-conscious, but he became more comfortable after being at the facility a short time and went forward with the evaluation. He was noted to be cooperative, and to remain on task 90% of the time. He was evaluated doing several sedentary, unskilled tasks, all involving the placement of labels in or on plastic bags containing raw meat products. He followed one- and two-step instructions properly; however, instructions had to be repeated several times for each step, and he did not retain the instructions from the first day to the second day. His average production rates during the evaluation were at 34%, 31%, 39%, and 41% of the "shop norm." From the testing, the evaluator reached the following conclusions:

> It is my opinion that it would be difficult for Mr. Beyerink to function in a competitive job market. I feel he would need assistance in dealing with his work environment and the performance of his job tasks due to his lack of retention. As we could see by the sample testing of his work, Mr. Beyerink was far below the standard norm. It is my opinion that he would need assistance in locating a job that would suit his capabilities. It would be very difficult to locate such a job because of Mr. Beyerink's inability to retain instructions from the previous day. He is also very unsure of himself which would make it difficult for Mr. Beyerink to attend work daily.

6

> I believe Mr. Beyerink would need assistance in maintaining any sort of community employment.

(R. 197)

On October 12, 2004, Beyerink underwent a psychological evaluation by Beverly A. Doyle, Ph.D. Dr. Doyle's testing indicated Beyerink has a Verbal IQ of 63, Performance IQ of 80, and Full Scale IQ of 68. His scores for Verbal IQ, Full Scale IQ, Verbal Comprehension Index, Working Memory Index, and Perceptual Speed Index were in the Mentally Deficient range, while his scores for Performance IQ and Perceptual Organization Index were in the Low Average range. Evaluation of his adaptive behavior resulted in a Standard Score of 62, which Dr. Doyle noted was commensurate with Beyerink's IQ. On the Wide Range Achievement Test, Beyerink's scores placed him at the third grade level in reading, and the first grade level in spelling and arithmetic. Dr. Doyle noted Beyerink was "not functionally literate, and his skills indicate that he would be unable to live or function independently." (R. 352) She diagnosed Beyerink with Mild Mental Retardation.

In a supplement to her report, Dr. Doyle noted that applying standard errors of measurement to Beyerink's test scores would result in a Verbal IQ between 60 and 68. Presumably referring to Dr. Wallace's assessment of Beyerink's Verbal IQ at 70, Dr. Doyle noted an IQ test score of 70 would include IQs between 67 and 75. In addition, she noted that because Beyerink qualified for special education in school, "he would have had to have had deficits in adaptive behavior." (R. 353)

At the ALJ hearing, Beyerink was asked about his statement to Dr. Wallace that he is able to read repair manuals. He explained that he does not read many of the words; rather, he uses the manual to look at pictures of engine parts and how they are assembled together. He also stated he helps his father with gardening work. He stated he is unable to get a job because of his reading and writing deficiencies, but he opined could do a simple job that required him "to sit down and put a nut on a bolt kind of thing." (R. 374)

7

The ALJ asked Vocational Expert Roger Marquardt whether an individual could work who can lift up to fifty pounds occasionally and twenty-five pounds frequently; stand or walk two hours at a time for a total of six hours a day; sit two hours at a time for a total of six hours in a day; occasionally bend, stoop, crouch, squat, kneel, crawl, and climb; and perform simple, routine, repetitive work at no more than a regular pace without the requirement for reading or mathematical skills. The VE indicated the individual could return to Beyerink's past work as a production line welder and as a salvage laborer.

The ALJ next asked the VE to consider the same individual, but with the added limitations that he could have no contact with the public and would have to work at a slow pace for up to one-third of the day. The VE indicated such an individual would not be employable.

The ALJ found Beyerink has not engaged in substantial gainful activity since his alleged disability onset date. Although he has worked since that date, none of his work has risen to the substantial gainful activity level.

The ALJ found that Beyerink's low back problems are severe, but not to the extent required to meet Listing level. In evaluating Beyerink's mental impairments, the ALJ disagreed with Dr. Doyle's opinion that Beyerink has mild mental retardation, offering the following explanation:

> "'Mental retardation' refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22," according to the definition of that impairment in section 12.05 of the Listing of Impairments. The claimant has engaged in a variety of manual labor jobs long enough to have qualified at one time for benefits under Title II of the [Social Security] Act. Although he was placed in special education classes, he still completed high school and worked after that. From the record the undersigned finds that his general intellectual functioning was not significantly sub-

> average. In addition, the record does not indicate that he had deficits in adaptive functioning manifested before reaching age 22. Despite the explanations from Ms. Doyle, he has borderline intellectual functioning rather than mental retardation and evaluation of his mental impairment under section 12.02 of the Listing of Impairments is more appropriate than evaluation under section 12.05.

(R. 20-21)

The ALJ noted Beyerink is able to perform household chores such as washing dishes, doing laundry, cleaning, cooking, repairing small household appliances, and shopping for groceries. He found Beyerink's activities of daily living to be mildly restricted, and he noted Beyerink has good relations with his family and friends, some difficulty relating to coworkers, mild difficulties with social functioning, and moderate problems with concentration, persistence, and pace. He concluded these impairments do not rise to Listing level, and accordingly Beyerink is not presumptively disabled.

The ALJ gave little credence to Beyerink's claim that his pain, psychological problems, and resulting limitations are disabling. To support this conclusion, the ALJ cited Beyerink's poor work history, the four-year gap in his medical records from October 1997 to September 2001, his statements to medical examiners about his physical capabilities, and the results of Dr. Wallace's testing. The ALJ disregarded Dr. Doyle's statement that Beyerink is not capable of working in physical labor jobs due to his physical limitations, noting such a conclusion "lies outside of [Dr. Doyle's] area of expertise and is a legal determination reserved to the Commissioner." (R. 23) The ALJ concluded Beyerink retains the following residual functional capacity:

> The claimant can lift 50 pounds occasionally and 25 pounds frequently. He can stand and walk for two hours at a time and for a total of six hours in an eight-hour workday and can sit for equal periods of time. He can bend, stoop, squat, kneel, crawl and climb occasionally. He is limited to working at a regular pace. He cannot do more than simple, routine,

9

> repetitive work and is not capable of work requiring him to read or make mathematical computations.

(*Id.*) Based on this RFC finding, the ALJ concluded Beyerink "is still capable of his past relevant work as a production line welder and as a salvage laborer." He therefore concluded Beyerink is not disabled.

Beyerink argues he meets the criteria of Listing 12.05C, for mental retardation. To be disabled under Listing § 12.05C, a claimant must meet the following criteria:

> *12.05 Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. All of these requirements must be met, including those in the introductory paragraph. Thus, "to meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). "A claimant who is found to be mentally retarded under this listing is presumed disabled at step three without further inquiry." *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) (citing 20 C.F.R. § 416.920(a)(4)(iii)).

Beyerink argues he meets all of these criteria. The court agrees. Dr. Wallace's testing on September 11, 2001, indicated Beyerink has a Verbal IQ of 70, and Full Scale IQ of 75. Dr. Doyle's testing on October 12, 2004, indicated Beyerink has a Verbal IQ

of 63, and Full Scale IQ of 68. Taking into account the five-point margin of error presumed by the testing protocol, Beyerink's Verbal IQ clearly falls within the range required by the Listing, despite the variation in the two test results. *See Walker v. Massanari*, 149 F. Supp. 2d 843, (S.D. Iowa 2001) (applying five-point margin of error to claimant's IQ testing).

The record further establishes that Beyerink's impairment manifested itself before age 22. Testing when he was fifteen-and-a-half years old indicated he was functioning at the level of a ten to eleven year old with regard to his vocabulary and grammatical skills. The ALJ relied, in part, on the fact that although Beyerink "was placed in special education classes, he still completed high school and worked after that." (R. 21) The ALJ failed to note that Beyerink was graded on a special education scale that allowed him to finish high school. Further, the Eighth Circuit has observed that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning," and "[m]ental retardation is not normally a condition that improves as an affected person ages." *Muncy v. Apfel*, 247 F.3d 728, 738 (8th Cir. 2001); *accord Christner*, 498 F.3d at 793; *Maresh*, 438 F.3d at 900. The record leaves no doubt that Beyerink's mental deficiency manifested before age 22.

The Commissioner makes much of the fact that Beyerink was able to live with a relational partner or female friend from time to time, he has a driver's license, he performs some household chores and repairs, and he has held numerous jobs. He attempts to distinguish *Maresh* and *Christner* on their facts, noting that in those cases, the claimants did not finish high school and had other evidence of adaptive limitations not present here. These arguments are not persuasive. While is true Beyerink has lived outside his parents' home for brief periods of time, he has never demonstrated an ability to live independently, without the assistance of another adult. His work history has been sporadic, and he has evidenced an inability to maintain any job for a sustained period of time. "'The issue is

not whether the claimant can perform gainful activity; rather, it is whether he has a[n] . . . impairment, other than his conceded mental impairment, which provides significant work-related limited function[.]'" *Maresh*, 438 F.3d at 901 (quoting *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997)).

With regard to the third requirement of Listing 12.05C, the ALJ found Beyerink's low back problems to be severe. (R. 20) Beyerink also has additional mental limitations. His two-day work evaluation in February 2003 demonstrated that although he remained on task and gave a good effort, Beyerink lacked the mental capacity to retain instructions for completing tasks from day to day, and his average production rates were far below the norm. The VE noted an individual with Beyerink's physical limitations who works at a slow pace for up to one-third of the day would be unemployable. These additional impairments impose significant work-related limitations of function because they have "a 'more than slight or minimal' effect on the ability to perform work." *Maresh*, 438 F.3d at 900 (citing *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000), quoting *Cook v. Bowen*, 797 F.2ld 687, 690 (8th Cir. 1986)). *See Nieves v. Sec'y of H.H.S.*, 775 F.2d 12, 14 (1st Cir. 1985) ("An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."); *Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) ("That 'significant' involves something more than 'minimal' but less than 'severe' follows from the regulations.").

The court finds the ALJ's decision to deny benefits is not supported by substantial evidence on the record. The record overwhelmingly demonstrates that Beyerink meets Listing 12.05C, and therefore he is entitled to benefits. The Commissioner's judgment is

**reversed**, and this matter is **remanded** to the Commissioner for calculation and award of benefits.

**IT IS SO ORDERED.**

**DATED** this 14th day of February, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT